# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE D. SCHREANE,<br><br>    Petitioner,<br><br>    v.<br><br>STEVEN LAKE,[1]<br><br>    Respondent. | Case No. 1:17-cv-01217-AWI-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND TO DENY PETITIONER'S MOTION TO DISMISS<br><br>ORDER DIRECTING CLERK OF COURT TO AMEND CAPTION<br><br>(ECF Nos. 1, 34) |

Petitioner Clarence D. Schreane is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Petitioner challenges a prison disciplinary proceeding on due process and First Amendment grounds. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus and denial of Petitioner's motion to dismiss.

## I.

## BACKGROUND

Petitioner currently is in the custody of the Federal Bureau of Prisons ("BOP") at the United States Penitentiary ("USP") in Atwater, California. The disciplinary incident that

---

[1] Steven Lake is the current Warden at the United States Penitentiary in Atwater, California. (ECF No. 36 at 1 n.1). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Steven Lake has been automatically substituted as Respondent in this matter.

1

Petitioner challenges in the instant habeas proceeding occurred at the Federal Transfer Center in Oklahoma City ("FTC Oklahoma City") while Petitioner was in transit from USP Allenwood in Pennsylvania to USP McCreary in Pine Knot, Kentucky. (ECF No. 22 at 6).[2]

On March 17, 2016, Petitioner received Incident Report Number 2828100 for a violation of Code 299, Disruptive Conduct Most Like Code 206, Making Sexual Proposals or Threats to Another. (ECF No. 22-1 at 13, Boxes 14–16). The incident report arose out of letters written to a female physician at FTC Oklahoma City. The letters are reproduced in full below.[3]

In the letter dated March 14, 2016, Petitioner wrote:

> Dear Dr. Lemon,
>
> I'm composing this correspondence, in acknowledgement of my appreciation for your concern about my well-being and physical health, I truly embrace your professionalism, you acknowledged that you would notify me of your discovery of my your finding from my medical file, in regards with the previous information form the year of 2008–2009 at USP Big Sandy. (In: re: shoulder)
>
> I can not articulate just how grateful I am to have had the brief opportunity to converse with you, in regards with my concern, I would appreciate your consideration with have a medical session with me, one-on-one at your convenience, however, you did advise me that you would return to the unit, to discuss some other concerns.
>
> I realize this is a transit facility, and its questionable and the time in length that I will be at this facility, and I really would like to converse with you about my concerns, so that any future treatment can be recommended. You stated that you would return back with relevant information from your discovery and about the shot and my fingers, when you felt the information in the joints of my fingers.
>
> I would appreciate your acknowledgement in person, so that I might resolve any questions, of curiosity. This is a follow up correspondence, and I trust that you will give consideration with my concerns.

(ECF No. 22-1 at 17–18) (typographical errors in original).

In the letter dated March 16, 2016, Petitioner wrote:

> Ms. Lemon,
>
> Due to the conditions beyond my means to control, I have no other options but, to compose this correspondence, with a pencil.
>
> However, I am extremely grateful to have the opportunity to be in the mist of your presense, conversing with you, with regards of my physical, medical health. I will

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

[3] For the reader's ease, the Court has edited some of the letters' unconventional capitalization. Otherwise, the letters' misspellings and grammatical errors are unchanged.

2

alway honor, and embrace your recommendation for my health. You have demonstrated within a few days more than the health care I have experienced in a few years, and I truly extend my gratitude to you.

I actually didn't think it was humanly possible to feel this way, in light of your concern for my health, I vigorously embrace you for providing me with adequate health care, and for having a interest with my medical need, I trust that upon receiving this correspondence that you would consider conducting a follow-up visit, I need to converse with you in the examination room, which I feel would be more appropriate to discuss my particular concerns, I appreciate your consideration, with this being spoken, I want you to fully understand that I am a very mature man, and any thing that we discuss, will remain with us, I can identify with how you acknowledged that some inmate will write a letter, in a form of a complaint to the warden, <u>NEVER</u> <u>EVER</u>, will I inform <u>any</u> staff member about my business, especially the warden, I would not do anything to put your career at risks or jeopardize the same.

I am a very optimistic person, and I have a very vigorous intuition about some one that has the same interest that I can identify with, and I embrace you for being my healthcare provider, I don't believe in procrastinating about expressing my free speech, and declaration of my human rights, its how someone might misconstrue my concerns that might cause a misunderstanding. Anyone that review this correspondence has violated your rights envaded your privacy, between patient/physician, because just as I have a right to be examined in privacy without a prison guard standing in the examination room, because, I might have some concerns that should remain between us.

And upon being transferred from this facility to my designated place of imprisonment I will be in touch with you, because I want you to be knowledgeable of my health, and what some other physician might recommend, which I would respect your opinion.

I do believe in all possibilities especially if we are on the same accord, however I can not make any foregoing prediction when I will departing this facility. I have been at this transfer center since 2/22/16, and faith had its way to allow me the opportunity to converse with you about my particular health concerns, and my desire to correspond with you in light of the same.

I realize I must use discretion to avoid any conspicuous, but however I really would appreciate your prompt consideration with a follow up visit, before the conclusion of this week, because its some concerns that I have that I wish to discuss with you; each day that God allow us to open our eyes to witness another day, I vigorous feel that we should make the necessary accomplishments.

(ECF No. 22-1 at 21–23).

Lieutenant J. Salguero, who was assigned to investigate Petitioner's charge, advised Petitioner of his right to remain silent during all stages of the disciplinary process and ascertained that Petitioner understood those rights. Thereafter, Petitioner gave this statement: "I feel the letter I gave [M]iss Lemons was taking [*sic*] out of proportion. I was trying to let her know that I appreciate the work she does. I never ment [*sic*] to say anything like I love her or

anything like that. My letter was misconstrued." (ECF No. 22-1 at 14, Box 24). After Lieutenant Salguero completed investigation of the charge, the incident report was forwarded to the Unit Discipline Committee ("UDC") for further action. (Id., Box 27).

The UDC held a hearing on April 12, 2016, which was beyond the normal five-day time frame for the UDC to meet. The Warden of USP McCreary had approved an extension of time because Petitioner received the incident report at FTC Oklahoma City while in transit from USP Allenwood to USP McCreary. (ECF No. 22-1 at 25). At the hearing, Petitioner was able to make a statement, and the UDC determined there was sufficient basis to refer the matter to the Discipline Hearing Officer ("DHO") for disposition. (ECF No. 22-1 at 24, Boxes 17–21).

On April 12, 2016, Petitioner was provided with a Notice of Discipline Hearing Before the DHO. Petitioner requested a staff representative, but indicated that he did not wish to have any witnesses. (ECF No. 22-1 at 27). Petitioner was also provided an Inmate Rights at Discipline Hearing form and acknowledged in writing that he was advised of those rights. (Id. at 29).

On May 11, 2016, the DHO held a hearing. (ECF No. 22-1 at 31, Box I(B)). According to the DHO report, Petitioner admitted to the conduct as charged and made the following statement: "There was nothing harmful. I was expressing my gratitude." (Id., Box III(A), (B)). Petitioner did not present any documentary evidence or witnesses. (Id., Box III(B), (C)). At the hearing, Petitioner was assisted by BOP Specialty Treatment Program Specialist Booker, M.D. (Id., Box II(E)). The DHO found that Petitioner committed a violation of "299 M/L 206," summarized as "conduct which disrupts the orderly running of the institution most like making sexual proposals." (ECF No. 22-1 at 32, Box IV(B), (C)). Petitioner was assessed a sanction of twenty-seven days of disallowed good conduct time, fifteen days of disciplinary segregation, and ninety days of lost commissary privileges. (Id. at 33, Box VI).

After administratively appealing the decision, Petitioner filed the instant federal petition for writ of habeas corpus on September 11, 2017. (ECF No. 1). Respondent filed a response to the petition, and Petitioner filed a reply. (ECF Nos. 22, 26). Petitioner filed a motion to dismiss the incident report on July 30, 2018. (ECF No. 34). Respondent filed supplemental briefing per the Court's order on August 10, 2018. (ECF Nos. 27, 36).

**II.**

**DISCUSSION**

Petitioner challenges the disciplinary proceeding arising from Incident Report Number 2828100 on due process and First Amendment grounds. (ECF No. 1 at 9). Petitioner asserts that: (1) Petitioner was not given an incident report for a Code 299 violation, and thus, the DHO improperly found Petitioner guilty of a Code 299 violation despite Petitioner being charged with a Code 206 violation; (2) there was insufficient evidence to support the finding of guilt, which was based on misconstruing Petitioner's exercise of his First Amendment rights; and (3) Petitioner was entitled to be provided with a written statement of the factual evidence that was relied upon in finding Petitioner guilty of the violation. (ECF No. 1 at 9–11).

**A. Review of Claims**

1. Due Process Requirements for Disciplinary Proceedings

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556.

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of the charges at least twenty-four hours before a disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454 (1984); Wolff, 418 U.S. at 563–67. Inmates are entitled to an impartial decisionmaker in a disciplinary proceeding. Wolff, 418 U.S. at 570–71.

In addition to various procedural requirements for disciplinary proceedings as set forth in Wolff, due process requires that there be "some evidence" to support the disciplinary decision to revoke good time credits. Hill, 472 U.S. at 454–55. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the

5

credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion . . . ." Id. at 455–56.

The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that a prison comply with its own, more generous procedures. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

2. Advanced Written Notice of Charges

Petitioner contends that he was not given an incident report for a Code 299 violation and thus, the DHO improperly found Petitioner guilty of a Code 299 violation despite Petitioner being charged with a Code 206 violation. (ECF No. 1 at 9–10). Incident Report Number 2828100 was attached as Exhibit 3 to Respondent's response to the petition. (ECF No. 22-1 at 12–14). "Making sexual proposition or threats to another" is typed in Box 9 ("Incident") of the incident report along with a handwritten notation of "Conduct which disrupts." (ECF No. 22-1 at 13, Box 9). "206" is typed in Box 10 ("Code") of the incident report. There is a handwritten notation in Box 10 that the Court is unable to decipher. (Id., Box 10). In Box 11, the following description of the incident, complete with misspellings and grammatical mistakes, was typed as follows:

> On 3-14-2016, Inmate Schreance, Clarence Reg. No. 17956-074, was seen in the morning sick call. Inmate Schreance asked if staff mail is monitored I told him yes. On 3-16-2016, I received a letter in the mail from Inmate Schreance how grateful he was to have had a brief opportunity to be in the mist of my presence and to converse with me. He goes on to say that he would appreciate my consideration with having a one-on-one medical session with me. On 3-17-2016, I received another letter from Schreance saying he actually didn't think it was humanly possible to feel this way, I vigorously embrace you. I need to converse with you in the examination room which I feel would be more appropriate. He goes on to say that he is a very mature man and would never inform any staff member about my business or put my career at risk. Furthermore Schreance says he will be intouch with me after his transfer from the Federal Transfer Center. Schreance says he must use discretion to avoid any conspicuous with a follow up visit.

(ECF No. 22-1 at 13, Box 11). In Box 26 ("Investigator's Comments and Conclusions"), the following was typed: "It is the conclusion of this investigation that Inmate Schreance [*sic*], Clarence Reg. No. 17956-074, is appropriately charged based on the facts contained within Section 11 of this Incident report, with a violation of Code 206 Making sexual proposals or

6

threats to another." (ECF No. 22-1 at 14, Box 26). It is unclear when the handwritten notations in Boxes 9 and 10 were added and whether the notations were included in the copy of Incident Report Number 2828100 that was given to Petitioner.

Petitioner was found guilty of a violation of Code 299, Disruptive Conduct Most Like Code 206, Making Sexual Proposals or Threats to Another. (ECF No. 22-1 at 32, Box IV(B), (C)). BOP Prohibited Act Code 299 provides:

> Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

28 C.F.R. § 541.3 tbl.1. Under Code 206, "Making sexual proposals or threats to another" is listed as a "High Security Level Prohibited Act." Id.

In Wolff, the Supreme Court explained that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Wolff, 418 U.S. at 564 (citing In re Gault, 387 U.S. 1, 33–34 & n.54 (1967)). The Ninth Circuit has found notice adequate where the officer described the incident as "stealing" rather than as "possession of contraband" but the "incident report described the factual situation that was the basis for the finding of guilt of possession of contraband and alerted Bostic that he would be charged with possessing something he did not own." Bostic v. Carlson, 884 F.2d 1267, 1270–71 (9th Cir. 1989), overruled on other grounds by Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016) (en banc). See also Burris v. Walker, 370 F. App'x 771, 771 (9th Cir. 2010) (rejecting petitioner's claim challenging disciplinary conviction for a charge that was not listed in the notice of charges because "the notice contained sufficient information to allow Burris to present a proper defense"); Jackson v. Daniels, 310 F. App'x 142, 142–43 (9th Cir. 2009) (finding no due process violation where petitioner "did not receive advance written notice of the particular disciplinary code provision that he was ultimately convicted of violating . . . because the incident report . . . described the factual situation that was the basis for the charge").

///

In the instant case, Petitioner was given a copy of Incident Report Number 2828100, which included a description of Petitioner's letters to Dr. Lemons and listed making sexual proposals or threats to another as the charge. (ECF No. 22-1 at 13–14). That Petitioner ultimately was found guilty of disruptive conduct most like making sexual proposals or threats to another (Code 299) rather than making sexual proposals or threats to another (Code 206) did not violate due process because Petitioner had notice of the underlying misconduct and had the opportunity to marshal facts in his defense. Accordingly, Petitioner is not entitled to habeas relief on this ground because "[t]he incident report adequately performed the functions of notice described in Wolff." Bostic, 884 F.2d at 1271.

3. First Amendment

Petitioner asserts that there was insufficient evidence to support the finding of guilt, which was based on a misinterpretation of Petitioner's letters that were an exercise of his First Amendment rights. (ECF No. 1 at 10; ECF No. 26 at 3). Respondent contends that Petitioner's First Amendment claim: (1) is not cognizable in federal habeas corpus; (2) is not exhausted as required by the Prison Litigation Reform Act; and (3) can be denied on the merits. (ECF No. 36).

### a. Cognizability in Federal Habeas Corpus

Citing to Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016) (en banc), Respondent argues that Petitioner's First Amendment claim is not cognizable in federal habeas corpus because success on the claim would not necessarily lead to immediate or speedier release. (ECF No. 36 at 2). Relying on Skinner v. Switzer, 562 U.S. 521 (2012), Nettles held that if success on a habeas petitioner's claim would not necessarily lead to his immediate or earlier release from confinement, the claim does not fall within "the core of habeas corpus" and thus, is not cognizable under 28 U.S.C. § 2254. Nettles, 830 F.3d at 935.

Nettles explicitly declined to address how the standard suggested in Skinner would apply to habeas petitions under 28 U.S.C. § 2241 brought by federal prisoners. Nettles, 830 F.3d at 931. Regardless, success on Petitioner's First Amendment claim would necessarily lead to speedier release because the incident report would be expunged and Petitioner's good time credit restored. Accordingly, dismissal based on Nettles is not warranted.

**b. Exhaustion**

Respondent contends that Petitioner's First Amendment claim is not exhausted as required by the Prison Litigation Reform Act ("PLRA"). (ECF No. 36 at 3–4). The PLRA does not apply to "habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).

Here, it appears Petitioner raised his First Amendment claim during the administrative appeals process. The record before this Court includes a Regional Administrative Remedy Appeal form in which Petitioner writes, "Petitioner Schreane stated in the initial introduction of the correspondence, not to misconstrue the content, and he also acknowledged his [F]irst Amendment to free speech . . . . Petitioner Schreane [F]irst Amendment was in fact violated . . . ." (ECF No. 22-1 at 10). Accordingly, dismissal based on nonexhaustion is not warranted.

**c. Analysis**

Turner v. Safley, 482 U.S. 78 (1987), provides the test for evaluating prisoners' First Amendment challenges. Shaw v. Murphy, 532 U.S. 223, 230 (2001). In Turner, the Supreme Court held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. See Ward v. Walsh, 1 F.3d 873, 876–77 (9th Cir. 1993) (holding Turner still applies to free exercise claims of prisoners after Employment Division, Dep't of Human Resources v. Smith, 494 U.S. 872 (1990)). The four factors relevant to this inquiry are: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives" to the challenged action. Turner, 482 U.S. at 89–90.

///

The regulation at issue here is 28 C.F.R. § 541.3, which prohibits *inter alia* conduct that disrupts or interferes with the security or orderly running of the institution most like making sexual proposals or threats to another. With respect to the first factor, Respondent argues that "[t]he regulation advances the legitimate penological interests of security, rehabilitation, and protecting staff from sexual harassment." (ECF No. 36 at 5). In upholding a jail's policy of excluding sexually explicit materials, the Ninth Circuit has held that "[i]t is beyond question that both jail security and rehabilitation are legitimate penological interests . . . [and that] there is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular likewise is legitimate." Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999). Accordingly, this factor weighs in favor of Respondent.

With respect to the second factor, the Court agrees with Respondent that "[t]here are alternative means available to an inmate to express his thanks to a female staff psychologist, including a letter, that do not involve the use of sexually suggestive, inappropriate, or harassing statements." (ECF No. 36 at 5). The DHO report also noted, "You stated you were only wanting to express your gratitude[.] If that had been the case then you should have just told her thank you in person and left it at that." (ECF No. 22-1 at 33, Box V). Accordingly, this factor weighs in favor of Respondent.

With respect to the third factor, the Ninth Circuit has held that where the right in question "would expose the female detention officers . . . to sexual harassment and a hostile work environment," the Court "should defer to the informed discretion of corrections officials." Mauro, 188 F.3d at 1061–62 (internal quotation marks and citations omitted). This reasoning applies equally to other staff, including physicians, who interact with inmates. Accordingly, this factor weighs in favor of Respondent.

With respect to the fourth factor, Petitioner has not met his burden "to show that there are obvious, easy alternatives to the regulation." Mauro, 188 F.3d at 1062 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987) ("By placing the burden on prison officials to disprove the availability of alternatives, the approach articulated by the Court of Appeals fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison

administrators."); Turner, 482 U.S. at 91; Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993) ("It is incumbent upon the prisoner to point to an alternative that accommodates their rights at *de minimis* cost to security interests.")). Accordingly, this factor weighs in favor of Respondent.

Based the foregoing, 28 C.F.R. § 541.3, which prohibits conduct that disrupts or interferes with the security or orderly running of the institution most like making sexual proposals or threats to another, is valid because it is reasonably related to legitimate penological interests. Therefore, Petitioner is not entitled to habeas relief on First Amendment grounds.

4. Sufficiency of the Evidence

The "requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." Hill, 472 U.S. at 455. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455–56. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457.

In Petitioner's letters, Petitioner requested a one-on-one medical session with Dr. Lemons and stated that he "need[ed] to converse with [Dr. Lemons] in the examination room, which [he felt] would be more appropriate to discuss [his] particular concerns." (ECF No. 22-1 at 17, 21). Petitioner wrote, "I actually didn't think it was humanly possible to feel this way, in light of your concern for my health, I vigorously embrace you for providing me with adequate health care[.]" (ECF No. 22-1 at 21). Petitioner also stated, "I want you to fully understand that I am a very mature man, and any thing that we discuss, will remain with us . . . NEVER EVER, will I inform any staff member about my business, especially the warden, I would not do anything to put your career at risks or jeopardize the same." (ECF No. 22-1 at 22). Petitioner's statements can be reasonably viewed as an effort to develop an inappropriate romantic relationship with Dr. Lemons. Therefore, the Court finds that there is "some evidence" to support the decision to disallow good conduct time, and Petitioner is not entitled to habeas relief on this ground.

5. Statement of Reasons

Petitioner asserts that he was entitled to be provided with the factual evidence that was relied upon in finding Petitioner guilty of the violation. (ECF No. 1 at 11). Here, the DHO

indicated in the report, "I relied on the written account of Dr. Lemon[s] and the evidence in deciding this issue. I considered your denial, but gave greater weight to the reporting staff member's written account of the incident." (ECF No. 22-1 at 33). The DHO report included Dr. Lemons's statement and Petitioner's statements to the investigating lieutenant and at the initial UDC hearing. (Id. at 32–33). The DHO also highlighted specific statements from Petitioner's letters that the DHO found to be "veiled attempts to foster some form of inappropriate relationship with Dr. Lemons." (ECF No. 22-1 at 33). The DHO report was delivered to Petitioner on June 28, 2016. (Id. at 34). As Petitioner received a written statement by the DHO that set forth the evidence he relied on and the reasons for the disciplinary action, Petitioner is not entitled to habeas relief on this ground.

### B. Petitioner's Motion to Dismiss

On July 30, 2018, the Court received Petitioner's motion to dismiss his incident report and reinstate his good time credit based on the same issues raised in the petition. (ECF No. 34). For the reasons discussed above, Petitioner's motion to dismiss should be denied.

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be DENIED; and

2. Petitioner's motion to dismiss (ECF No. 34) be DENIED.

Further, the Court HEREBY DIRECTS the Clerk of Court to amend the caption to reflect Steven Lake as Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The

assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 26, 2018**  /s/ *Eric P. Grosjean*
UNITED STATES MAGISTRATE JUDGE